O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHRISTINA ROUGEAU,** | **NO. CV 07-5026-MAN** |
| **Plaintiff,** | |
| | **MEMORANDUM OPINION** |
| **v.** | |
| | **AND ORDER** |
| **MICHAEL J. ASTRUE,** | |
| **Commissioner of Social Security,** | |
| **Defendant.** | |

Plaintiff filed a Complaint on August 7, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of her application for supplemental security income benefits ("SSI"). On August 31, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on May 6, 2008, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding the case for the payment of benefits or, in the alternative, for the correction of legal errors; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on April 27, 2005. (Administrative Record ("A.R.") 51-52.)  Plaintiff claims to have been disabled since March 1, 1993, due to:  diabetes; pain in her back, feet, and legs; migraine headaches; and hypertension.  (A.R. 19-20, 34, 55, 61.)  She has past relevant work experience as a certified nurse assistant and babysitter.  (A.R. 19, 22, 62, 370-71.)

The Commissioner denied plaintiff's claim initially on July 14, 2005, and upon reconsideration on October 27, 2005.  (A.R. 30-31, 34-38, 41-46.)  Plaintiff filed a timely written request for hearing, and on September 5, 2006, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Walter J. Fisher ("ALJ"). (A.R. 47, 368-91.)  On October 26, 2006, the ALJ denied plaintiff's claim, and on June 20, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (A.R. 18-23, 5-7.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff suffers from severe impairments of diabetes, peripheral neuropathy, blurry vision, hypertension, anemia, obesity, and degenerative joint disease.  (A.R. 20.)  The ALJ rejected the opinion of plaintiff's treating physician, Peter Chau, M.D., regarding plaintiff's limitations, because "Dr. Chau's opinion is not supported by any of Dr. Chau's treatment notes or any of the other objective evidence."  (*Id*.)  The ALJ further found that, "[plaintiff's] medically determinable impairments could reasonably be expected to

2

1  produce some of the alleged symptoms, but that her statements concerning

2  the intensity, persistence and limiting effects of these symptoms are

3  not entirely credible."  (A.R. 21.)

4

5  The ALJ found that plaintiff retained the residual functional

6  capacity ("RFC") to perform some "sedentary exertional-level work."

7  (A.R. 20, 23.)[1]  Based on this RFC, the ALJ determined that plaintiff is

8  unable to perform any of her past relevant work.  (A.R. 22.)  Relying

9  on the Medical-Vocational Guidelines, and based on the ALJ's RFC

10 assessment, as well as plaintiff's classification as a "younger

11 individual" with a "limited or less" education, the ALJ concluded that

12 plaintiff was not disabled at anytime since April 28, 2005, the date her

13 application for SSI benefits was filed.  (A.R. 23.)

14

15 **STANDARD OF REVIEW**

16

17 Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

18 decision to determine whether it is free from legal error and supported

19 by substantial evidence in the record as a whole.  Orn v. Astrue, 495

20 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant

21 evidence as a reasonable mind might accept as adequate to support a

22 conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than

23 a mere scintilla but not necessarily a preponderance."  Connett v.

24 Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the

25

26     [1]    Specifically, the ALJ found that plaintiff "has the residual
functional capacity to: lift and/or carry up to 10 pounds occasionally
27 and at least 5 pounds frequently; stand and/or walk up to 2 hours out of
an 8-hour work day; sit up to six hours out of an 8-hour workday; and
28 occasionally bend and stoop."  (A.R. 20.)

1  record can constitute substantial evidence, only those "'reasonably

2  drawn from the record'" will suffice.  <u>Widmark v. Barnhart</u>, 454 F.3d

3  1063, 1066 (9th Cir. 2006)(citation omitted).

4

5       Although this Court cannot substitute its discretion for that of

6  the Commissioner, the Court nonetheless must review the record as a

7  whole, "weighing both the evidence that supports and the evidence that

8  detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of</u>

9  <u>Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*

10  <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is

11  responsible for determining credibility, resolving conflicts in medical

12  testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d

13  1035, 1039-40 (9th Cir. 1995).

14

15       The Court will uphold the Commissioner's decision when the evidence

16  is susceptible to more than one rational interpretation.  <u>Burch v.</u>

17  <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).   However, the Court may

18  review only the reasons stated by the ALJ in his decision "and may not

19  affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d

20  at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse

21  the Commissioner's decision if it is based on harmless error, which

22  exists only when it is "clear from the record that an ALJ's error was

23  'inconsequential to the ultimate nondisability determination.'" <u>Robbins</u>

24  <u>v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v.</u>

25  <u>Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400

26  F.3d at 679.

27  ///

28  ///

4

1

**DISCUSSION**

2

3      Plaintiff alleges the following two issues:  (1) whether the ALJ
4 evaluated plaintiff's treating physician's opinion properly; and (2)
5 whether the ALJ evaluated plaintiff's testimony properly.  (Joint
6 Stipulation ("Joint Stip.") at 3.)

7

8 **I.    The ALJ Failed To Provide A Legitimate Reason For Rejecting The**
9      **Medical Opinion Of Dr. Chau, Plaintiff's Treating Physician.**

10

11      A treating physician's opinions regarding a claimant's condition
12 must be given substantial weight.  Embrey v. Bowen, 849 F.2d 418, 422
13 (9th Cir. 1988).  Generally, a treating physician's opinion is given
14 greater weight, because "'he is employed to cure and has a greater
15 opportunity to know and observe the patient as an individual.'"
16 Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)(citation
17 omitted).  If a treating physician's opinion is "well-supported by
18 medically-acceptable clinical and laboratory diagnostic techniques and
19 is not inconsistent with the other substantial evidence in [the] case
20 record, [the Commissioner] will give it controlling weight."  20 C.F.R.
21 § 416.927(d)(2).  When, as in this case, an ALJ elects to disregard the
22 medical findings of a treating physician, he must set forth "specific,
23 legitimate reasons for doing so that are based on substantial evidence
24 in the record."  Magallanes, 881 F.2d at 751.  An ALJ's failure to do so
25 is reversible error.   Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.
26 1987); *see also* Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996);
27 Cotten v. Bowen, 799 F.2d 1403, 1408-09 (9th Cir. 1987).

28

1     The ALJ rejected the findings of plaintiff's treating physician,

2  Dr. Chau, by whom plaintiff has been treated regularly since May 1999,

3  and who opined that plaintiff cannot sit, stand, walk, lift, or use her

4  hands for an eight hour day due to her obesity, poorly controlled

5  diabetes mellitus, joint pain, and musculoskeletal pain.  (A.R. 284-86,

6  363-65.)  The ALJ's asserted reason for rejecting Dr. Chau's opinion --

7  that it "is not supported by any of Dr. Chau's treatment notes or any of

8  the other objective evidence" (A.R. 20) -- is neither legitimate nor

9  based on substantial evidence.

10

11     Contrary to the ALJ's assertion, Dr. Chau's opinion is consistent

12  with his treatment notes and supported by the objective medical evidence

13  of record.    A careful review of the record reveals the following

14  significant medical evidence, the majority of which the ALJ failed to

15  discuss:  in June 2004, plaintiff experienced bilateral foot pain, leg

16  pain, and migraines (A.R. 127); in July 2004, plaintiff was noted to be

17  sore and experiencing pain in her low back and vaginal area (A.R. 126);

18  in September 2004, plaintiff experienced leg pain and neuropathy was

19  noted (A.R. 125); on December 10, 2004, plaintiff developed a boil on

20  her groin (A.R. 123); on December 29, 2004, plaintiff developed another

21  boil on her buttocks and was bruising "all over" (A.R. 122); in January

22  2005, plaintiff experienced dizziness, leg pain, uncontrolled diabetes,

23  and severe anemia, at which point plaintiff was hospitalized (A.R. 121);

24  on January 4, 2005, plaintiff was admitted to St. Mary's Medical Center

25  due to severe vaginal bleeding and anemia, both of which were

26  complicated by her diabetes (A.R. 139-49); on January 7, 2005, plaintiff

27  was discharged from the hospital after undergoing multiple tests and

28  receiving a blood transfusion (A.R. 139); on June 22, 2005, plaintiff

1  was admitted to Long Beach Memorial Hospital due to severe hyperglycemia
2  and uncontrolled diabetes, which caused her to develop "diabetic
3  paresthesias [tingling sensations] which are painful" (A.R. 189, 191);
4  on May 7, 2006, plaintiff was admitted to Bellflower Medical Center for
5  an abscess in the left gluteal region due to her uncontrolled diabetes
6  (A.R. 304-07); and on August 11, 2006, plaintiff was again admitted to
7  Bellflower Medical Center for another abscess as well as joint pain and
8  weakness, which resulted in diagnoses of right leg pain due to
9  neuropathy, poorly controlled diabetes, and an abscess (A.R. 296).

11     It is clear that Dr. Chau's treatment records show that plaintiff:
12 has chronic sores in her pubic area, which cause her to be unable to sit
13 at times; has uncontrolled diabetes and diabetes-related complications,
14 despite medication; and has undergone multiple hospitalizations.
15 Accordingly, the ALJ's stated reason for rejecting Dr. Chau's opinion is
16 neither legitimate nor based on substantial evidence and, thus,
17 constitutes reversible error.

19     On remand, the ALJ must provide the requisite "specific, legitimate
20 reasons," for rejecting Dr. Chau's opinion, or the ALJ must accord Dr.
21 Chau's opinion "controlling weight," in accordance with the governing
22 legal standards.  *See* 20 C.F.R. § 416.927(d)(2)(if a treating source
23 opinion is "well-supported by medically acceptable clinical and
24 laboratory diagnostic techniques and is not inconsistent with the other
25 substantial evidence in [the] case record, [it will be given]
26 controlling weight").
27 ///
28 ///

1  **II.   The ALJ Erred In Rejecting Plaintiff's Subjective Pain Testimony**
2       **Without Setting Forth Clear And Convincing Reasons For Doing So.**

4       Plaintiff alleges that the ALJ erred in his consideration of
5  plaintiff's testimony. (Joint Stip. at 12-16, 17-18.)  For the reasons
6  set forth below, the Court agrees.

8       Once a disability claimant produces objective evidence of an
9  underlying physical impairment that is reasonably likely to be the
10 source of her subjective symptom(s), all subjective testimony as to the
11 severity of the symptoms must be considered.  Moisa v. Barnhart, 367
12 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345
13 (9th Cir. 2001)(*en banc*); *see also* 20 C.F.R. § 416.929(a) (explaining
14 how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a
15 finding of malingering based on affirmative evidence thereof, he or she
16 may only find an applicant not credible by making specific findings as
17 to credibility and stating clear and convincing reasons for each."
18 Robbins, 466 F.3d at 883.  Further, an ALJ may not rely solely on the
19 absence of objective medical evidence supporting the *degree* of pain
20 alleged as a basis for finding that a plaintiff's testimony regarding
21 subjective symptoms is not credible.  Fair v. Bowen, 885 F.2d 597,
22 601-02 (9th Cir. 1989); Stewart v. Sullivan, 881 F.2d 740, 743-44 (9th
23 Cir. 1989).

25      Both in her filings with the Commissioner and in her testimony,
26 plaintiff described various subjective symptoms from which she claims to
27 suffer.  In a 2005 Pain Questionnaire, plaintiff stated that she has
28 daily pain in her back, neck, and head, and the pain in her feet "feels

8

1 like [she] is walking on needles." (A.R. 76.)   She stated that she

2 "use[d] to clean the whole house, but now [she] can't do it because of

3 [her] pain in [her] legs and back." (A.R. 77.)   In a 2005 Exertional

4 Daily Activities Questionnaire, plaintiff stated that "it takes [her]

5 about 2½ hours just to walk [three] blocks . . . [and] it feels like

6 someone is sticking needles in [her] legs and stepping on them [a]nd

7 they swell up." (A.R. 79.)   In a 2005 Daily Activities Questionnaire,

8 plaintiff stated that she has pain in her back, legs, and hands and

9 headaches.   (A.R. 72.)   She stated that she has difficulty caring for

10 her personal needs, and her children and cousin assist by cooking and

11 cleaning for her.  (A.R. 68.)   Plaintiff stated that she leaves her home

12 approximately twice a week to go to the doctor's office or church.

13 (A.R. 70.)   In a 2005 Fatigue Questionnaire, plaintiff stated that she

14 can not stand very long because of the pain in her back and feet, and

15 she sometimes becomes dizzy.   (A.R. 74.)

16

17     At the 2006 hearing, plaintiff testified that her brother goes

18 grocery shopping for her, because she is unable to walk or stand in the

19 grocery store for very long due to pain in her back and feet.   (A.R.

20 376.)   She testified that her brother does the cooking and the chores.

21 (*Id*.)   She can dress herself, but her daughter assists her with washing

22 her back.   (A.R. 377.)   She testified that the pain in her back, which

23 "travels all the way down to [her] legs," caused her to stop working.

24 (A.R. 377-78.)   She further testified that the pain in both her feet

25 also caused her to stop working, because her feet become swollen, feel

26 like they are "burning," get sores that have to be "shaved down," and

27 feel "like somebody is sticking [her] with needles" on the bottom of her

28 feet.   (A.R. 378-79.)   She testified that, although she takes her

1  medications, her blood sugar is out of control.  (A.R. 381.)  She

2  further testified that she gets dizzy, tired, and experiences

3  "blurriness sometimes" as a result of her high blood sugar.  (*Id*.)

4  Plaintiff also testified that she gets migraine headaches and takes

5  Vicodin and Tylenol 3 to relieve the pain, but they "do not work."

6  (A.R. 383.)  She further testified that she cannot stand for long

7  periods of time due to her back and foot pain, and she cannot sit when

8  she gets boils and abscesses "on her behind and vagina."  (A.R. 385.)

9  Specifically, plaintiff stated that, when she gets the boils and

10 abscesses, which "happens maybe two times a month" and "lasts for like

11 a week," she "can't sit down at all" because the pain "keeps [her]

12 behind and vagina sore."  (*Id*.)  To relieve the pain associated with

13 these boils and abscesses, plaintiff testified that she "l[ies] on [her]

14 side . . . because [she] can't lie on [her] back . . . because the boils

15 [are] right there and [they] hurt really badly."  (A.R. 386.)  Finally,

16 plaintiff testified that she last worked part-time in approximately

17 2002, as a care-giver for an elderly person, but left that job because

18 she "couldn't take the standing because [her] back was hurting too bad

19 . . . and [her] feet constantly hurt and [she] couldn't take all the

20 standing and walking all over the hospital."  (A.R. 388.)

21

22      In rejecting plaintiff's credibility, the ALJ stated that,

23 "[plaintiff's] medically determinable impairments could reasonably be

24 expected to produce some of the alleged symptoms, but that her

25 statements concerning the intensity, persistence and limiting effects of

26 these symptoms are not entirely credible."  (A.R. 21.)  The ALJ

27 enumerated a laundry list of reasons for finding plaintiff's statements

28 and testimony about her subjective symptoms to be not credible.

10

However, when examined in the light of the record, these reasons do not withstand scrutiny.

The ALJ first deemed plaintiff not credible, because he concluded that plaintiff has not "had frequent treatment for any of her impairments." (A.R. 21.)  This assertion is belied by the record.  Dr. Chau's treating notes reflect that plaintiff has consistently treated with Dr. Chau from June 29, 2004, through March 2007.[2]  (*See, e.g.* A.R. 120-49, 233-35, 296, 363-65.)  In addition, the records reflect multiple hospitalizations and additional treatment from Michael Perley, M.D. and Minou Tran, M.D., both of whom plaintiff saw for her diabetes and diabetes-related complications on several occasions in 2005 and 2006. (A.R. 178-79, 189-91, 194-96, 199, 233-35, 287-90, 304-07.)  Thus, this first reason is not a convincing basis on which to reject plaintiff's credibility.

Second, in rejecting plaintiff's testimony, the ALJ stated that, while the treatment notes "indicated foot and leg pain, . . . this is addressed by the sedentary exertional-level residual functional capacity." (A.R. 21.)  This is not a convincing basis upon which to reject plaintiff's subjective pain complaints, because this sedentary RFC does not address plaintiff's inability to sit when she has boils and abscesses on her buttocks and vaginal areas.  The record shows that plaintiff has had several boils and abscesses on her buttocks, groin,

_____

[2]      Dr. Chau states in a January 2006 Residual Functional Capacity Assessment Form that he has been regularly treating plaintiff "every three months or so," since May 1999.  However, the first medical records in evidence are dated June 29, 2004.  (A.R. 285.) *See* Section III, *infra.*

1   and vaginal area over the past few years.  (*See* A.R. 122-23, 126 -- from

2   approximately July 2004, through December 2004, plaintiff had boils in

3   her vaginal area and on her buttocks; A.R. 139-49 -- in January 2005,

4   plaintiff required hospitalization for her abscesses; A.R. 289-90, 296,

5   304-07 -- in May 2006, plaintiff was noted to have another boil lasting

6   several months and requiring two hospitalizations in May 2006, and

7   August 2006.)  This second reason for rejecting plaintiff's subjective

8   complaints of pain is equally unconvincing.

9

10       Third, the ALJ noted that there was one occasion, on June 23, 2005,

11  evidencing "diet manipulation" and an "indication of noncompliance with

12  medication," which lessen plaintiff's credibility.  (A.R. 21.)   This

13  assertion is a misrepresentation of the record and not a convincing

14  reason to discount plaintiff's credibility.   The record shows that

15  plaintiff has been compliant with her medications, yet her diabetes

16  remains consistently out of control, causing dizziness and her abscesses

17  to remain unhealed for long periods of time.  (*See* A.R. 122-23, 126,

18  128, 130, 139-49, 187, 193, 198, 276, 277, 288-90, 296, 304-07.)   In

19  addition, difficulty controlling one's diet is not synonymous with

20  medication noncompliance and is not a proper rationale for rejecting a

21  plaintiff's credibility.  *See* Orn, 495 F.3d at 638 ("there is no reason

22  to conclude from [plaintiff's] failure to adhere to an 1800 calorie-per-

23  day diet that he is not telling the truth about his medical problems

24  that are exacerbated by his obesity.").

25

26       Fourth, the ALJ asserted that, contrary to plaintiff's testimony,

27  "[t]here is no evidence that [plaintiff] completed the diabetic drug

28  trial study that she signed up for on June 1, 2005."  (A.R. 21.)   The

1  ALJ is mistaken, and even the Commissioner concedes that the ALJ's
2  assertion is patently wrong.  (Joint Stip. at 17.)  The record reflects
3  that, in June 2005, plaintiff signed up for a study in which she would
4  be administered a drug called "TAK 125."  (A.R. 200-13.)  On June 27,
5  2005, the consultative examiner's report reflects that plaintiff was
6  taking "some type of experimental drug for neuropathy."  (A.R. 215.)  In
7  addition, the May 7, 2006 emergency room notes indicate that plaintiff
8  was taking "TAK 125."  (A.R. 309.)  Thus, this reason for rejecting
9  plaintiff's credibility is inaccurate and, unconvincing.

10

11    Fifth, the ALJ rejected plaintiff's pain and subjective symptom
12  testimony, because "while [she] stated on appeal that she had difficulty
13  bathing and grooming, this does not preclude her from performing
14  sedentary exertional-level work."  (A.R. 21.)  The ALJ stated further
15  that plaintiff "in fact testified at the hearing that she can dress
16  herself, which contradicts her statement." (*Id*.)  Plaintiff's limited
17  ability to self-groom is not indicative of her ability to engage in any
18  level of sustained full-time work activity.  Moreover, plaintiff's
19  testimony at the hearing was consistent with her statements on the 2005
20  Daily Activities Questionnaire to which the ALJ cites.  Again, this
21  stated reason for rejecting plaintiff's credibility is not convincing
22  nor supported by the evidence.

23

24    Sixth, the ALJ's assertion, that plaintiff's cousin stated that
25  plaintiff can go to church every Sunday and shop for groceries once a
26  month contradicts plaintiff's testimony that "it is hard for her to sit
27  or stand," is not a convincing basis upon which to reject plaintiff's
28  credibility.  (A.R. 22.)  While plaintiff goes to church once a week and

13

1 shops for groceries once a month, she requires assistance with both

2 activities, and she never denied going to church in either her testimony

3 or daily activities questionnaire, as the ALJ suggests.  (*Id.*)

4

5    Finally, the ALJ impermissibly relies on plaintiff's ability to

6 perform simple activities of daily living, such as her ability to "cook

7 simple meals and do laundry" and "pay her bills, handle a savings

8 account, count change and use a checkbook and money orders" to discredit

9 plaintiff's credibility.  (*Id.*)  There is no basis for finding that the

10 simple daily activities cited by the ALJ, which plaintiff apparently

11 struggles to perform, are easily transferable to the more grueling

12 environment of the workplace, much less that they are inconsistent with

13 and/or negate plaintiff's assertions regarding her subjective symptoms

14 flowing from her objectively determined physical impairments.  *See*

15 Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(only if the level

16 of activity were inconsistent with claimant's claimed limitations would

17 these activities have any bearing on claimant's credibility); Gonzalez

18 v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily activities may

19 not be relied upon to support an adverse credibility decision where

20 those activities do not affect the claimant's ability to perform

21 appropriate work activities on an ongoing and daily basis); Cooper v.

22 Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(disability claimant need not

23 "vegetate in dark room" in order to be deemed eligible for benefits).

24 Moreover, it is not clear how plaintiff's ability to "pay her bills,

25 handle a savings account, count change and use a checkbook and money

26 orders," renders her not credible, when plaintiff is claiming a

27 physical, not mental, disability.

28

1    There is no question that plaintiff has impairments that,
2  objectively, could cause the type and degree of pain she claims.  As
3  discussed above, the ALJ failed to state clear and convincing reasons
4  for rejecting plaintiff's statements and testimony about her pain and
5  attendant limitations.   Accordingly, the ALJ's finding -- that
6  plaintiff's statements concerning the intensity, persistence, and
7  limiting effects of these symptoms are not entirely credible -- was
8  erroneous.

9

10  **III.  <u>Remand Is Required To Remedy Defects In The ALJ's Decision And</u>
11       <u>Obtain Additional Medical Records</u>.**

12

13    In the Ninth Circuit, courts have the discretion to "credit as
14  true" both the opinions of treating physicians and the testimony of
15  claimants when the ALJ has failed to provide legally sufficient reasons
16  for rejecting the same.  *See, e.g.,* <u>Widmark</u>, 454 F.3d at 1069; <u>Benecke</u>
17  <u>v. Barnhart</u>, 379 F.3d 587, 594 (9th Cir. 2004); <u>Connett</u>, 340 F.3d at
18  876; <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000).  The decision
19  whether to remand for further proceedings also is within the Court's
20  discretion.  *Id.* at 1178.  As the Ninth Circuit has repeatedly held,
21  when the record is fully developed and a remand for further
22  administrative proceedings would serve no purpose, the Court should
23  remand for an award and payment of benefits.  *See, e.g.*, <u>Benecke</u>, 379
24  F.3d at 593; <u>Lester</u>, 81 F.3d at 834; <u>Smolen</u>, 80 F.3d at 1292.

25

26    On the record presently before the Court, the evidence strongly
27  suggests that plaintiff has been disabled since at least June 29, 2004,
28  the date indicated on the first medical records of evidence.  However,

15

1   the record before the Court does not contain any medical records from

2   plaintiff's alleged disability onset date of March 1, 1993, through June

3   29, 2004.[3]

5       In his decision, the ALJ stated that, although plaintiff "alleges

6   fatigue from diabetes since age 17, or about since the 1993 alleged

7   onset date, . . . there is no evidence of treatment at that time, and

8   the first records in the evidence are not dated until June 29, 2004."

9   (A.R. 21.)  Although the ALJ left the record open for 30 days after the

10  hearing for the submission of additional records and none from this time

11  period were provided, the ALJ has an affirmative duty to develop the

12  record in order to make a fair determination as to disability,

13  regardless of whether the claimant is represented by an attorney.  *See*

14  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

16      In view of the incomplete record before the Court, which makes it

17  impossible for the Court to determine whether plaintiff was disabled

18  prior to June 29, 2004, the Court declines to exercise its discretion to

19  "credit as true" plaintiff's testimony and the opinion of Dr. Chau and,

20  therefore, to order the payments of benefits to plaintiff.  Instead, the

21  Court will accord the Commissioner the opportunity to further develop

23      [3]   The Court is cognizant that the Commissioner's Regulations
    require an ALJ to "develop [a claimant's] complete medical history for
24  at least the 12 months preceding the month in which [a claimant] files
    [her] application unless there is a reason to believe that development
25  of an earlier period is necessary."  20 C.F.R. § 416.912(d).  Here, in
    view of plaintiff's alleged onset of disability in 1993 and the ALJ's
26  reliance on the absence of medical records as a justification to reject
    portions of plaintiff's testimony regarding her subjective pain and
27  attendant functional limitations, it is appropriate for the ALJ to seek
    additional medical records beyond the 12-month time period contemplated
28  by the Regulations.

1 the record by obtaining additional medical records from which the onset

2 date of plaintiff's disability reasonably can be determined and to

3 provide legally sufficient reasons, if any such reasons exist, for

4 rejecting plaintiff's subjective pain and symptom testimony and her

5 treating physician's opinion regarding her limitations.

6

7      Accordingly, in this case, remand is the appropriate remedy to

8 allow the ALJ the opportunity to remedy the above-mentioned deficiencies

9 and errors.  *See, e.g.,* Benecke, 379 F.3d at 593 (remand for further

10 proceedings is appropriate if enhancement of the record would be

11 useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

12 1989)(remand appropriate to remedy defects in the record).

13

14                              **CONCLUSION**

15

16      Accordingly, for the reasons stated above, IT IS ORDERED that the

17 decision of the Commissioner is REVERSED, and this case is REMANDED for

18 further proceedings consistent with this Memorandum Opinion and Order.

19

20      IT IS FURTHER ORDERED that the Clerk of the Court shall serve

21 copies of this Memorandum Opinion and Order and the Judgment on counsel

22 for plaintiff and for defendant.

23

24      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

25

26 DATED: March 31, 2009

27                                            /s/
                                      MARGARET A. NAGLE
28                              UNITED STATES MAGISTRATE JUDGE

                                    17